# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:

MICHAEL R. DELIMA and
ELEANOR J. DELIMA,

    Debtors.

Case No. 16-11380-RGM
(Chapter 13)

## MEMORANDUM OPINION

THIS CASE was before the court on the chapter 13 trustee's objection to debtors' claim of exemptions (Docket Entry 17). The debtors filed a voluntary petition under chapter 13 of the Bankruptcy Code on April 19, 2016. They scheduled eight checking accounts with balances totaling $21,018.85, and claimed $18,053.63 of that amount as exempt under Va. Code Ann. § 34-29. The trustee objected to the debtors' claim of exemption.

Under § 34-29, a garnishing creditor may subject up to 25% of a debtor's weekly disposable earnings to garnishment.[1] Limiting the amount of a debtor's wages that can be garnished creates an

---

[1]Va. Code Ann. § 34-29 states in pertinent part:

(a) Except as provided in subsections (b) and (b1), the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed the lesser of the following amounts:
    (1) Twenty-five percent of his disposable earnings for that week, or
    (2) The amount by which his disposable earnings for that week exceed 40 times the federal minimum hourly wage prescribed by § 206(a)(1) of Title 29 of the United States Code in effect at the time earnings are payable.
. . .
(c) No court of the Commonwealth and no state agency or officer may make, executed, or enforce any order or process in violation of this section. The exemptions herein shall be granted to any person so entitled without further proceedings.
(d) For the purpose of this section:
    (1) The term "earnings" means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, payments to an independent contractor, or otherwise, whether paid directly to the individual or deposited with another entity or person on behalf of or traceable to the individual, and includes periodic payments pursuant

exemption for the remaining 75%. Virginia's statute restricting the amount of an individual's disposable earnings that can be garnished mirrors the federal statute. 15 U.S.C. § 1673. Congress's intent in enacting this statute was to ensure that wage earners were able to receive at least 75% of their take-home pay each pay period so that they would have enough cash to meet basic needs. *See In re Kokoszka*, 479 F.2d 990, 997 (2nd Cir. 1973).

The critical issue in this case is whether wages otherwise exempt lose their exempt status when they are paid and deposited into a checking account. The Virginia Supreme Court had previously held that when funds are deposited in a general bank account and commingled with nonexempt funds, they lost whatever exemption they would otherwise have had. *Bernardini v. Central Nat'l Bank of Richmond*, 223 Va. 519, 290 S.E.2d 863 (1982); *see also Alexander & Jones v. Sovran Bank, N.A*, 905 F.2d 716 (4th Cir. 1990). In 1992, approximately 10 years after *Bernardini*, the General Assembly amended § 34-29 so that exempt wages deposited into a bank account retained their exempt status for 30 days. The 30-day provision was removed from the statute in 1996.

The 1992 and 1996 amendments were addressed in *In re Meyer*, 211 B.R. 203, 211 (Bankr. E.D. Va. 1997). The court noted that the statute itself clearly addresses wages deposited in a bank account. It defines "earnings" as "compensation . . . whether paid directly to the individual ***or deposited with another entity or person on behalf of and traceable to the individual.***" Va. Code

---

to a pension or retirement program,
(2) The term "disposable earnings" means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld, and
(3) The term "garnishment" means any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt.

Ann. § 34-29(d)(1) (emphasis added). The plain language of the statute protects wages in bank accounts, first for 30 days, and then without a temporal limit. The court observed that the statute's protection of wages would have little meaning if the money could not remain in debtors' bank accounts until they paid rent, utilities, groceries, and other necessary expenses.

There is necessarily commingling of exempt and nonexempt wages in a bank account when the check is deposited. Three-quarters is exempt and one-quarter is not. Commingling cannot, therefore, destroy the exempt status of wages deposited into a bank account. As long as the exempt wages can be traced, they will remain exempt. For tracing purposes, the "first-in, first-out" method is appropriate. That is, the oldest funds in the account are deemed to be withdrawn first. *See NCNB Fin. Servs., Inc. v. Shumate*, 829 F.Supp. 178, 181 (W.D. Va 1993).

This conclusion is supported by other cases in which Social Security benefits and payments from pension plans retain their identity and exempt status when deposited into a bank account with other monies. *See Shumate*, 829 F.Supp. at 180-81; *In re Hanes*, 162 B.R. 733, 742 (Bankr. E.D. Va. 1994).

*In re Cantu*, 553 B.R. 565 (Bankr. E.D. Va. 2016) addresses the wage exemption, Va. Code Ann. §34-29, as does this case, but in a different context. It addressed the wage exemption in the context of calculating the debtor's projected disposable income. 11 U.S.C. §§ 1322(a)(4) and 1325(b)(1)(B). This case addresses it in the context of calculating the liquidation test. 11 U.S.C. § 1325(a)(4). The determination of a debtor's exemptions affects the liquidation test. Exempt assets are not administered by a chapter 7 trustee and are not included in the liquidation test calculation in chapter 13. Exemptions do not affect the determination of a debtor's net disposable income because all income not excluded by 11 U.S.C. § 101(10A)(B) or § 1325(b)(2) is included in the calculation.

3

Section 101(10A)(b) excludes "benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism . . . or domestic terrorism . . . on account of their status as victims of such terrorism." *See Mort Ranta v. Gorman,* 721 F.3d 241, 250–51 (4th Cir. 2013) (recognizing statutory exemption for Social Security benefits under 11 U.S.C. § 101(10A)). Section 1325(B)(2) excluded "child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child." In *Cantu,* the debtor unsuccessfully sought to exclude future income that would be exempt from garnishment under Va. Code Ann. § 34-29 from his net disposable income calculation. While the matter was procedurally brought before the court on the chapter 13 trustee's objection to the debtor's claim of exemption, it was substantively a determination of the debtor's net disposable income. *Cantu* and this case are complementary but independent.

The chapter 13 trustee argues that the wage exemption is not applicable in chapter 13 cases. He notes that § 34-29(a) by its own terms does not apply to "[a]ny order of any court of bankruptcy under Chapter XIII of the Bankruptcy Act." Va. Code Ann. § 34-29(b)(2). Leaving aside that the Bankruptcy Act of 1898 was repealed by the Bankruptcy Code of 1978, § 34-29(b)(2) gives effect to Article VI of the United States Constitution which provides that the laws of the United States shall be the supreme law of the land by recognizing that wage orders in chapter 13 cases can exceed the state limitations on garnishments. 11 U.S.C. § 1325(c). It may be necessary for a debtor to commit a portion of his wages that would not be subject to garnishment outside bankruptcy to his chapter 13 plan to afford him the relief he seeks. In deciding to do so, he is choosing to accept the benefits

4

of chapter 13. But, he is protected. Chapter 13 is voluntary. Only a debtor may file a chapter 13 plan, although a confirmed plan may be modified upon request of the debtor, the trustee or the holder of an allowed unsecured claim. 11 U.S.C. §§ 1321 and 1329(a). In the end, a debtor has the right to dismiss his chapter 13 case at any time (provided that the case has not been previously converted from chapter 7, 11 or 12) or to convert it to chapter 7. 11 U.S.C. § 1307(a) and (b).

The trustee also argues that allowing the exemption may be abusive in some cases. He notes that mortgage lenders tend to return checks when a mortgage is in arrears unless the check brings the mortgage current. If the debtor does not spend the returned money but keeps it in his bank account, the bank account could have a substantial amount when the debtor finally files bankruptcy. This may be true, but it does not justify the debtor in trickling the accumulated amount out to creditors in a chapter 13 plan over 60 months. This could well be evidence of bad faith. The fund was accumulated to pay the mortgage arrears. The chapter 13 plan should provide for the payment of the accumulated fund at the beginning of the plan to reduce the mortgage arrears and thereby increase the distribution from monthly payments to the trustee under the plan to the unsecured creditors. The court reaches its conclusion based on the plain reading of the statute and not the trustee's parade of horrible imaginings. *See Simmons v. Himmelreich,* ___ U.S. ___, 136 S.Ct. 1843, 1849 (2016).

## Conclusion

The trustee's objection will be overruled.

Alexandria, Virginia
September 23, 2016

Sep 23 2016

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

Sep 23 2016 mjr

5

Copy electronically to:

Neil S. Welles
Thomas P. Gorman

19541